## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **CLOUD CONTROLS LLC,** | |
| Plaintiff, | Case No.  2:25-cv-1249 |
| **v.** | |
| **VERIZON COMMUNICATIONS, INC. and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,** | JURY TRIAL DEMANDED |
| Defendants. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cloud Controls LLC ("CC" or "Plaintiff") files this Original Complaint for patent infringement against Verizon Communications, Inc. and Cellco Partnership d/b/a Verizon Wireless (collectively, "Defendants") alleging as follows:

## BACKGROUND AND NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.   This case asserts infringement of United States Patent Nos. 10,025,552 (the "'552 Patent"), 8,195,087 (the "'087 Patent"), 7,613,446 (the "'446 Patent), 9,621,699 (the "'699 Patent"), 9,585,003 (the "'003 Patent"), and 7,167,703 (the "'703 Patent") (collectively, "the Patents-in-Suit").

2.      The Patents-in-Suit are owned by CC.

## THE PARTIES

3.      Cloud Controls LLC is a limited liability company filed under the laws of the State of Texas, with its principal place of business at 5900 Balcones Drive, Suite 100, Austin TX 78731.

4.      Defendant Verizon Communications, Inc. is a Delaware corporation with a

principal place of business at 1095 Avenue of the Americas, New York, New York 10036. Defendant Verizon Communications, Inc.'s registered agent for service is CT Corporation System, 28 Liberty St., New York, NY 10005.

5.    Defendant Cellco Partnership d/b/a Verizon Wireless is a Delaware partnership with a principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920. Defendant Cellco Partnership d/b/a Verizon Wireless's registered agent for service is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

6.    Defendants use, import into the United States, sell, and/or offer for sale in the United States the Accused Products, including at their retail stores in this district, such as 741 N Central Expy, Plano, Texas 75075

## JURISDICTION AND VENUE

7.    This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.    The Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.

9.    Defendants have regularly and systematically transacted business in Texas, directly or through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.

10.    Defendants have placed infringing products into the stream of commerce by selling those products in Texas at their retail locations, shipping those products into Texas or

knowing that the products would be shipped into Texas.

11.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c). Venue is proper in this district under 28 U.S.C. §1400(b) because Defendants have regular and established places of business in this district and have committed acts of infringement in this district.

12.    On information and belief, Defendants have regular and established places of business in this district, including their retail stores in this district, such as 7411 N Central Expy, Plano, Texas 75075.  Those locations are responsible for using, importing into the United States, selling, and/or offering for sale the Accused Products.

13.    Defendants use, sell, offer for sale, and/or import the Accused Products in this District.

14.    Defendants have also committed acts of infringement in this district by commercializing, marketing, selling, distributing, and servicing the Accused Products.

## THE PATENTS-IN-SUIT

### The '552 Patent

15.    The '552 Patent, titled "Selective Locking of Input Controls of a Portable Media Player," was issued on July 17, 2018, and expires on January 8, 2028.  A copy of the '552 Patent is attached as Exhibit A.

16.    The claims of the '552 Patent are not directed to an abstract idea.  For example, claim 1 of the '552 Patent recites a system for the selective locking of user controls in a portable media player.  When enabled, the selective locking system prevents operation of input controls on the portable media player made by the user based on whether the device is in a locked state, as well as the individual operation mode.  In some embodiments, the portable media player can

predictively or automatically select the lock state and individual operation mode. Taken as a whole, the claimed inventions of the '552 Patent are not limited to well-understood, routine, or conventional activity. For example, as the '552 Patent explains, conventional media player devices caused "many users [to] be undesirably restricted by current player locking mechanisms." Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of portable media players.

17. The written description of the '552 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

18. CC is the owner and assignee of all rights, title, and interest in and under the '552 Patent.

19. CC has standing to sue for infringement of the '552 Patent.

**The '087 Patent**

20. The '087 Patent, titled "Controlling of Wireless Connection of a Portable Device Including an Illuminating Component or Switch," was issued on June 5, 2012, and expires on January 8, 2028. A copy of the '087 Patent is attached as Exhibit B.

21. The claims of the '087 Patent are not directed to an abstract idea. For example, claim 1 of the '087 Patent recites a system for connecting a portable media player with a wireless communications network. The portable media player includes an actuator associated with an illumination component that is configured to communicate with a wireless communication component. In some embodiments, the illumination component indicates a communications state

4

of the wireless connection component via a mode of illumination.  Taken as a whole, the claimed inventions of the '087 Patent are not limited to well-understood, routine, or conventional activity. For example, as the '087 Patent explains, "wireless connectivity is not established in most players" and "users may find it difficult to manage or properly utilize the wireless capabilities of a portable music player."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of portable media players.

22.     The written description of the '087 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

23.     The written description of the '087 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24.     CC is the owner and assignee of all rights, title, and interest in and under the '087 Patent.

25.     CC has standing to sue for infringement of the '087 Patent.

**The '446 Patent**

26.     The '446 Patent, titled "Wireless Mobile Phone with Authenticated Mode of Operation Including Finger Print Based Authentication," was issued on November 3, 2009, and expired on June 2, 2025.  A copy of the '446 Patent is attached as Exhibit C.

27.     The claims of the '446 Patent are not directed to an abstract idea.  For example, claim 8 of the '446 Patent recites a method for authenticating a user to an apparatus based on the user's fingerprint, which is detected via an input mechanism on a power-on button.  Different functions of the device are available based on whether the user is successfully authenticated or not.  Taken as a whole, the claimed inventions of the '446 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '446 Patent explains that "under the prior art, wireless mobile phones are at risk of unauthorized usage, as well as data being compromised by unauthorized accesses."  The claimed invention provides nonconventional devices and methods of preventing unauthorized usage and access.  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of mobile phones.

28.     The written description of the '446 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '446 Patent.

29.     CC has standing to sue for infringement of the '446 Patent.

**The '699 Patent**

30.     The '699 Patent, titled "Mobile Digital Communication/Computing Device Having a Context Sensitive Audio System," was issued on April 11, 2017, and expired on October 14, 2023.  A copy of the '699 Patent is attached as Exhibit D.

31.     The claims of the '699 Patent are not directed to an abstract idea.  For example, claim 10 of the '699 Patent recites a mobile client device.  The mobile client device includes means

for providing first and second audio signals at different audio volume levels.  The second audio volume level is non-intrusively lower than the first audio volume level initially, but increases to a discernable volume level higher than the first audio volume level until the user responds to the second audio signal.  Taken as a whole, the claimed inventions of the '699 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '699 Patent explains that mobile client devices at the time of the claimed inventions were only beginning to incorporate multimedia capabilities.  As a result, "the playing of the music may interfere with the delivery of a message alert for an incoming call and vice versa."  The claimed invention provides nonconventional devices and methods of providing "a more context sensitive way of notifying a user of an alert tone while an audio system is being utilized by multi-media resources."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of mobile client devices.

32.    The written description of the '699 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '699 Patent.

33.    CC has standing to sue for infringement of the '699 Patent.

**The '003 Patent**

34.    The '003 Patent, titled "Serving Data/Applications from a Wireless Mobile Phone," was issued on February 28, 2017, and expires on November 10, 2025.  A copy of the '003 Patent is attached as Exhibit E.

35.    The claims of the '003 Patent are not directed to an abstract idea.  For example, claim 1 of the '003 Patent recites a specific method for serving data or applications from mobile devices.  The mobile devices work with computing devices such as client computers, domain name servers, proxy servers, and other phones equipped with the technology to practice the method.  The method involves the mobile device establishing a data connection to a data network and a computing device locating the data or application on the mobile device, among other things.  Taken as a whole, the claimed inventions of the '003 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '003 Patent explains that the user's wireless mobile phones, domain name servers, and proxy servers implement nonconventional "logic and functions to bridge the fact that [the user's wireless mobile phone] generally does not have a persistent connection to the Internet, nor a persistent IP address."  Accordingly, the claimed inventions include inventive components that improve upon the methods of serving data.

36.    The written description of the '003 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '003 Patent.

37.    CC has standing to sue for infringement of the '003 Patent.

**The '703 Patent**

38.    The '703 Patent, titled "Wireless Mobile Image Messaging," was issued on January 23, 2007, and expired on September 14, 2024.  A copy of the '703 Patent is attached as Exhibit F.

39.     The claims of the '703 Patent are not directed to an abstract idea.  For example, claim 1 of the '703 Patent recites a method of operation for a wireless mobile device capable of sending messages to another mobile device to facilitate communication between the users.  The method permits the user of the wireless mobile device to graphically convey information about the user, by, for example, selecting images from a plurality of images.  The wireless mobile device then transmits that image to the other wireless mobile device.  Taken as a whole, the claimed inventions of the '703 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '703 Patent explains that wireless mobile devices at the time of the claimed inventions had "limited input capabilities."  The claimed invention provides nonconventional devices and methods for "facilitating non-verbal communications between users of wireless mobile devices, such as cellular telephones, using image messages."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of the sending and receiving of image messages between users of mobile devices.

40.     The written description of the '703 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention. CC is the owner and assignee of all rights, title, and interest in and under the '703 Patent.

41.     CC has standing to sue for infringement of the '703 Patent.

## **GENERAL ALLEGATIONS OF PATENT INFRINGEMENT**

42.     As detailed below and in the accompanying claim charts (Exhibits G-L), Defendants have infringed (and continues to infringe) one or more claims of the Patents-in-Suit by

using, selling, offering for sale, and/or importing into the United States at least, for example, the following products (the "Accused Products") that illustrate Defendants' infringement:

**Smartphones** (e.g.,

- Alcatel (e.g., Avalon V);

- Apple (e.g., iPhone 17 / 17 Plus / 17 Pro / 17 Pro Max, iPhone 16 / 16 Plus / 16 Pro / 16 Pro Max / 16e, iPhone 15 / 15 Plus / 15 Pro / 15 Pro Max, iPhone 14 / 14 Plus / 14 Pro / 14 Pro Max, iPhone 13 / 13 mini / 13 Pro / 13 Pro Max, iPhone 12 / 12 mini / 12 Pro / 12 Pro Max, iPhone 11 / 11 Pro / 11 Pro Max, iPhone X / XR / XS / XS Max, iPhone 8 / 8 Plus, iPhone 7 / 7 Plus, iPhone Air, iPhone SE (2020), iPhone SE (3rd Gen));

- Google (e.g., Pixel 10 / 10 Pro / 10 Pro Fold / 10 Pro XL, Pixel 9 / 9a / 9 Pro / 9 Pro Fold / 9 Pro XL, Pixel 8 / 8a / 8 Pro, Pixel 7 / 7a / 7 Pro, Pixel 6 / 6a / 6 Pro, Pixel Fold, Pixel 5, Pixel 4 / 4a / 4 XL);

- HMD (e.g., Vibe);

- Kyocera (e.g., DuaForce Pro 2 with Sapphire Shield, DuraForce Pro 3, DuraForce Ultra 5G UW, DuraSport 5G UW);

- LG (e.g., K51, Q70, Stylo 5, Stylo 6, V50 ThinQ 5G, V60 ThinQ 5G UW, Velvet 5G UW, Wing);

- Motorola (e.g., Moto G Stylus line (e.g.,  Moto G stylus 2025, Moto G stylus 5G 2024), Moto G variants (e.g., Moto G 2025, Moto G 2024, Moto G7 Play, Moto G Power 2025, Moto G Power 5G 2024, Moto G Power 2021), Motorola One / Edge / Razr line (e.g., Motorola Razr / Razr+ / Razr Ultra 2025, Motorola Edge 2025, Motorola Edge 2024, Motorola One 5G UW ace), Moto Z4);

- Nokia (e.g., 2 V Tella, 3 V, 8 V 5G UW);

- NUU (e.g., X7);

- OnePlus (e.g., 8 5G UW, Nord 30 5G);

- Orbic (e.g., Myra 5G UW);

- Palm (e.g., Compact Phone by Palm)

- Schok (e.g., Volt);

- Sonim (e.g., XP8);

- TCL (e.g., 10 5G UW, 30 V 5G);

- And other smartphones which include the infringing features);

**Tablets** (e.g.,

- Apple (e.g., iPad Pro (M5) 11-inch & 13-inch, iPad Pro (M4) 11-inch & 13-inch, iPad Pro (6th gen, 2022) 12.9-inch, iPad Pro (5th gen, 2021) 11-inch & 12.9 inch, iPad Pro (4th gen, 2020) 11-inch & 12.9 inch, iPad Air (M3) 11-inch & 13-inch, iPad Air (M2) 11-inch & 13-inch, iPad Air (M1, 5th gen, 2022), iPad Air (4th gen, 2020), iPad (A16), iPad (10th gen, 2022), iPad (9th gen, 2021), iPad (8th gen, 2020), iPad mini (A17 Pro, 2024), iPad mini (6th gen, 2021));

- CTL (e.g., Chromebook NL71CTL);

- Lenovo (e.g., Flex 5G, IdeaPad Duet 3i, ThinkPad X13s);

- LG (e.g., G Pad 5 10.1 FHD);

- Orbic (e.g., Airsurf 5G UW);

- Razer (e.g., Edge 5G);

- TCL (e.g., Tab, Tab 10 NXTPaper 5G, Tab 8, Tab 8 NXTPaper 5G, Tab 8 Plus, Tab Disney Edition, Tab Disney Edition 2, Tab Family Edition, Tab Pro 5G);

- And other tablets which include the infringing features);

**Earbuds / Headphones** (e.g.,

- A Unity System (e.g., Baraka AUS-83 Rotatable Bluetooth Speaker and True Wireless Earbuds, Baraka AUS-M30 True Wireless, Fingerprint Earbuds);

- Altec Lansing (e.g., 2-in-1 Bluetooth and Wired Kid-Safe Headphones, NanoPads Truly Wireless Earbuds);

- Apple (e.g., AirPods (1st Gen) with Charging Case, AirPods (2nd Gen) with Charging Case, AirPods (3rd Generation) with Lightning Charging Case, AirPods 4, AirPods 4 with Active Noise Cancellation, AirPods Max, AirPods Pro, AirPods Pro (2nd Generation), AirPods Pro (2nd Generation) with Lightning Charging Case, AirPods Pro 2, AirPods Pro 3);

- Bang & Olufsen (e.g., Beoplay E8 Sport Earphones, Beoplay HX Over-the-Ear Wireless Bluetooth Headphones with ANC);

- Beats (Fit Pro Noise Cancelling Wireless Earbuds, Flex Wireless Earphones, Powerbeats Fit - Wireless Noise-Cancelling Workout Earbuds with Ultimate Secure Fit, Powerbeats Pro, Powerbeats Pro 2 High-Performance Earbuds, Powerbeats Wireless Earphones, Powerbeats3 Wireless Earphones, Solo Buds True Wireless Earbuds, Solo Pro Headphones, Solo3 Wireless Headphones, Studio Buds True Wireless Noise Cancelling Earbuds, Studio Pro Wireless Headphones, Studio Wireless Over-Ear Headphones - The Beats Skyline Collection, Studio Buds + True Wireless Noise Cancelling Earbuds, Stuido3 Wireless Over-Ear Headphone, BeatsX Earphones);

- Belkin (e.g., Soundform Freedom True Wireless Earbuds, Soundform Kids On Ear Headphones, Soundform Nano 2 True Wireless Earbuds);

- BlueParriott (e.g., B350-XT Noise-Cancelling Headset);

- Bose (e.g., Noise Cancelling 700 Headphones, Quiet Comfort Earbuds II, QuietComfort 45 Headphones, QuietComfort Headphones, QuietComfort True Wireless earbuds, QuietComfort Ultra Headphones, QuietComfort Ultra Wireless Noise Cancelling Earbuds, QuietComfort Ultra True Wireless Noise Cancelling earbuds (2nd Gen), SoundSport Free, SoundSport Pulse wireless headphones, Sport Earbuds, Ultra Open Earbuds);

- Google (e.g., Pixel Buds, Pixel Buds 2a, Pixel Buds A-Series, Pixel Buds Pro, Pixel Buds Pro 2);

- Jabra (e.g., Elite 4 Active True Wireless Earbuds, Elite 65t Wireless Earbuds, Elite 75t Wireless Earbids with ANC, Elite 85t Wireless Earbuds with Advanced ANC, Talk 25 SE Bluetooth Headset);

- JLab (e.g., Flex Open Clip True Wireless Earbuds, GO Air POP True Wireless Earbuds, Go Air Sport True Wireless Earbuds, Go Air True Wireless Earbuds, Go Work Wireless Office Headset, JBuddies Studio Pro Wireless Over-Ear Headphones, JBuddies Studio Wireless Kids Headphones, JBuds Air ANC True Wireless Earbuds, JBuds Lux ANC Headphones, JBuds Mini True Wireless Earbuds, Pro Signature Wireless Earbuds, Studio ANC Wireless On Ear Headphones, Work Buds True Wireless Earbuds);

- Letsfit (e.g., T12 Wireless Earbuds, T13 True Wireless Earbuds, T20 Wireless Earbuds, T22 True Wireless Earbuds, T26 True Wireless Earbuds with ANC);

- LG (e.g., Tone Flex Bluetooth Headset, Tone Free HBS-FN6 Wireless Earbuds, Tone Free Wireless Earbuds FP8 with ANC and Uvano, Tone Platinum SE Bluetooth Stereo Headset, Tone Style HBS-SL6S headset);

- Marshall (e.g., Minor IV True Wireless Earbuds, Motif II ANC True Wireless Earbuds);

- Master & Dynamic (e.g., Active Noise-Cancelling Wireless Over Ear Headphones, On Plus Over Ear Headphones, True Wireless Earphones);

- Montblanc (e.g., MB 01 Headphones);

- Motorola (e.g., Moto Buds Charge True Wireless Headphones);

- Plantronics (e.g., Voyager 3200 Premium Mono Headset);

- Razer (e.g., Hammerhead True Wireless Earbuds (2nd Gen));

- Skullcandy (e.g., Dime True Wireless In-Ear Headphones, Indy True Wireless Earbuds, Jib True Wireless In-Ear Headphones, Jib Tune Wireless In-Ear Headphones, Sesh Evo True Wireless Earbuds);

- Aftershokz / Shokz (e.g., AeropexBone Conduction Wireless Bluetooth Headphones, OpenMove Wireless Bone Conduction Open-Ear Lifestyle Headphones, Trekz Titanium Open-Ear Wireless Bone Conduction Headphones, OpenComm Bone Conduction Stereo Bluetooth Headset, OpenComm2 Noise-Cancelling Bone Conduction Stereo Headset, OpenDots ONE Open - Ear True Wireless Earbuds, OpenFit 2 Open-Ear earbuds, OpenFit 2+ Open-Ear True Wireless Earbuds, OpenFit Air Open Ear True Wireless Earbuds, OpenFit Open-Ear True Wireless Earbuds, OpenMove Bone Conduction Open Ear Lifestyle/Sport Headphones, OpenMove Wireless Bone Conduction Open-Ear Lifestyle Headphones, OpenRun Bone Conduction Open-Ear Endurance Headphones, OpenRun Pro Bone Conduction Open-Ear Sport Headphones, OpenRun Pro Premium Bone Conduction Open-Ear Sport Headphones, OpenRun Wireless Bone Conduction Open-Ear Headphones);

- Anker (e.g., Soundcore A25i True Wireless Earbuds, Soundcore Liberty 4 Noise Cancelling Wireless Earbuds, Soundcore Anker Liberty 3 Pro True Wireless In-Ear

Headphones, Soundcore Liberty Air 2 Pro True Wireless In-Ear Headphones, Soundcore Life Dot 2 NC True Wireless Earbuds, Soundcore Life Dot 2 XR True Wireless Earbuds, Soundcore Life Note 3i Noise Cancelling Earbuds, Soundcore Life Note 3XR True Wireless ANC Earbuds, Soundcore Life Tune XR Wireless Active Noise-Cancelling Over-the-Ear Headphones, Soundcore Life U2i Wireless Neckband Headphones, Soundcore P25i True Wireless Headphones, Soundcore Q20i Wireless Noise Cancelling Headphones, Soundcore Sleep A20 Noise Masking True Wireless Earbuds, Soundcore Space Q45 Wireless Noise Cancelling Headphones, Soundcore Sport X10 True Wireless Headphones, Soundcore Work H700 On-Ear Noise Cancelling Office Headset, Soundcore P30i True Wireless ANC Earbuds, Soundcore P40i Bluetooth Wireless ANC Earbuds, Soundcore Sport X20 True Wireless Headphone);

- Sony (e.g., LinkBuds S True Wireless Noise Canceling Earbuds, Truly Wireless Earbuds with Extra Bass, Truly Wireless Noise-Canceling Earbuds, WF1000XM5 True Wireless Noise Cancelling Earbuds, WH-CH510 Wireless Over-Ear Headphones, WIC100 Wireless In-Ear Headphones, Wireless Noise Canceling Over-the-Ear Headphones);

- And other earbuds / headphones which include the infringing features);

**Speakers / Smart-Speakers** (e.g.,

- Altec Lansing (e.g., Baby Boom XL Portable Bluetooth Speaker, HydraJolt Everything Proof Bluetooth Speaker, HydraMini everything Proof Bluetooth Speaker, HydraMotion Everything Proof Bluetooth Speaker, Jacket H20 4 Portable Bluetooth Speaker, LifeJacket Jolt with Lights Portable Bluetooth Speaker, LifeJacket XL Jolt Rugged Bluetooth Speaker, Mini LifeJacket Jolt Portable Bluetooth Speaker, Mix2.0 Bluetooth Party Speaker, RockBox Waterproof Portable Bluetooth Speaker);

- Amazon (e.g.,  Echo Show 10 HD Smart Display with motion and Alexa, Echo Show 8 Smart Display with Alexa, Echo Show 5 Smart Display, Echo Show 5 (2nd Gen) Kids Edition with Parental Controls, Echo (4th Gen) with Alexa, Echo Dot (4th Gen) Smart Speaker with Clock and Alexa, Echo Dot (4th Gen) Kids Edition – Panda, Echo Dot (3rd Gen) Smart Speaker with Clock and Alexa);

- Anker (e.g., Motion Boom Plus Portable Bluetooth Speaker, PowerConf Bluetooth Conference Speakerphone, Soundcore Flare 2 Bluetooth Speaker, Soundcore Mini 3 Pro Portable Bluetooth Speaker, Soundcore Rave + Portable Bluetooth Speaker, Soundcore Rave Neo 2 Portable Bluetooth Party Speaker, Soundcore Rave Party 2 Portable Bluetooth Party Speaker, Soundcore Rave Partycase Portable Bluetooth Speaker, Soundcore Select Pro Bluetooth Speaker);

- Apple (e.g., HomePod mini);

- Bang & Olufsen (e.g., Beolit 20 Portable Bluetooth Speaker, Beosound A1 2nd Gen Portable Bluetooth Speaker with Voice Assist, Beosound Explore Portable Durable Bluetooth Speaker);

- Beats (e.g., Pill+ portable Bluetooth speaker);

- Belkin (e.g., Soundform Elite Hi-Fi Smart Speaker + Wireless Charger with Amazon Alexa, Soundform Elite Hi-Fi Smart Speaker + Wireless Charger with Google Assistant);

- Bose (e.g., SoundLink Flex Bluetooth Speaker, Soundlink Micro Bluetooth Speaker, SoundLink Revolve II, SoundLink Revolve Plus II, SoundLink Tevolve Plus II, TV Speaker, SoundLink Max Bluetooth Speaker);

- Braven (e.g., Mini Rugged Portable Speaker, Stryde 360);

- Google (e.g., Home, Home Max, Home mini, Nest Audio, Nest Hub (2nd Gen), Nest Hub Max, Nest Mini);

- Jabra (e.g., Freeway Bluetooth Speaker);

- LG (e.g., XBoom Go PL7 Speaker with Meridian Technology, Xboom Go Speaker);

- Monster (e.g., DNA MAX Portable Bluetooth Speaker, DNA One Portable Bluetooth Speaker, Icon Bluetooth Speaker, Puck Portable Waterproof Bluetooth Speaker, Rocker 270 Sport Portable Indoor/Outdoor Wireless Speaker, Rockin Roller 270 Indoor/Outdoor Wireless Speaker, S310 Superstar Bluetooth Speaker);

- Motorola (e.g., Smart Speaker with Amazon Alex Moto Mod);

- Sony (e.g., Portable X-Series XE200 Bluetooth Speaker, Portable X-Series XE300 Bluetooth Speaker, SRS-NB10 Wireless Neckband Speaker, SRS-RA3000 Premium Wireless Bluetooth Speaker, SRS-TA5000 Premium Wireless Bluetooth Speaker, SRS-XB23 Portable Bluetooth Speaker, SRS-XB33 Portable Bluetooth Speaker, SRS-XG500 X-Series Portable Bluetooth Speaker, XRS-SB43 Portable Bluetooth Speaker, XRS-XB43 Portable Bluetooth Speaker);

- Ultimate Ears (e.g., Ultimate Ears Boom 2, Ultimate Ears BOOM 3 Portable Wireless Bluetooth Speaker, Ultimate Ears Wonderboom 2, Ultimate Ears Wonderboom Portable Wireless Bluetooth Speaker);

- And other speakers / smart-speakers which include the infringing features).

43.    Defendants' acts of infringement have caused damage to CC.  CC is entitled to recover from Defendants the damages sustained by CC as a result of Defendants' wrongful acts in an amount subject to proof at trial.

44.    Further discovery may reveal earlier knowledge of one or more of the Patents-in-

Suit, which would provide additional evidence of Defendants' willful infringement of the Patents-in-Suit.

45.    For each count of infringement listed below, CC incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

### COUNT I – INFRINGEMENT OF THE '552 PATENT

46.    CC incorporates herein the allegations made in paragraphs 1-45.

47.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '552 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

48.    An exemplary claim chart demonstrating Defendants' infringement of the '552 Patent is attached as Exhibit G and incorporated herein by reference.

49.    Defendants have knowledge of the '552 Patent and of its infringement of the '552 Patent at least through service of the Complaint.

50.    On information and belief, despite Defendants' knowledge of the '552 Patent and of its infringement of the '552 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '552 Patent.

51.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '552 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '552 Patent via at least their use of the Accused Products.

52.    Since issuance of the '552 Patent, neither CC nor its predecessors or licensees

have made, offered for sale, sold, or imported a product that practices any claim of the '552 Patent or that would otherwise require marking under 35 U.S.C. § 287.

53.     CC may recover pre-suit damages for Defendants' infringement of the '552 Patent under 35 U.S.C. § 287.

54.     As a result of Defendants' infringement of the '552 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

55.     Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '552 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '552 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '552 Patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '552 Patent, including, for example, Claim 1 of the '552 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '552 Patent and with the knowledge that the induced acts constitute infringement.  Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '552 Patent.

56.     Defendants have also indirectly infringed by contributing to the infringement of the '552 Patent.  Defendants have contributed to the direct infringement of the '552 Patent by its

customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '552 Patent, including, for example, claim 1 of the '552 Patent.  The special features include, for example, the selective locking system recited in claim 1, wherein the user may prevent any user input on the portable media player when user locks it.  The special features constitute a material part of the invention of one or more of the claims of the '552 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

57.    Defendants' direct and indirect infringement of the '552 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT II – INFRINGEMENT OF THE '087 PATENT

58.    CC repeats and re-alleges the allegations in Paragraphs 1-57 as though fully set forth in their entirety.

59.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '087 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

60.    An exemplary claim chart demonstrating Defendants' infringement of the '087 Patent is attached as Exhibit H and incorporated herein by reference.

61.    Defendants have knowledge of the '087 Patent and of its infringement of the '087 Patent at least through service of the Complaint.

62.    On information and belief, despite Defendants' knowledge of the '087 Patent and of its infringement of the '087 Patent, Defendants have not sought to remedy its infringement or

sought to identify any good faith belief as to why they do not infringe the '087 Patent.

63.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '087 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '087 Patent via at least their use of the Accused Products.

64.    Since issuance of the '087 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '087 Patent or that would otherwise require marking under 35 U.S.C. § 287.

65.    CC may recover pre-suit damages for Defendants' infringement of the '087 Patent under 35 U.S.C. § 287.

66.    As a result of Defendants' infringement of the '087 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

67.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '087 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '087 Patent. Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '087 Patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '087 Patent, including, for example, Claim 1 of the '087 Patent. Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and

other third-parties to use the Accused Products in an infringing manner. Defendants performed these steps, which constitute induced infringement with the knowledge of the '087 Patent and with the knowledge that the induced acts constitute infringement. Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '087 Patent.

68.    Defendants have also indirectly infringed by contributing to the infringement of the '087 Patent. Defendants have contributed to the direct infringement of the '087 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '087 Patent, including, for example, claim 1 of the '087 Patent. The special features include, for example, the portable media player system recited in claim 1, wherein the illumination component indicates a communication state of the wireless connection. The special features constitute a material part of the invention of one or more of the claims of the '087 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

69.    Defendants' direct and indirect infringement of the '087 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT III – INFRINGEMENT OF THE '446 PATENT

70.    CC repeats and re-alleges the allegations in Paragraphs 1-69 as though fully set forth in their entirety.

71.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '446 Patent, including, for example, claim 8, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

72.     An exemplary claim chart demonstrating Defendants' infringement of the '446 Patent is attached as <u>Exhibit I</u> and incorporated herein by reference.

73.     Defendants have knowledge of the '446 Patent and of its infringement of the '446 Patent at least through the service of this Complaint.

74.     On information and belief, despite Defendants' knowledge of the '446 Patent and of its infringement of the '446 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '446 Patent.

75.     On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 8 of the '446 Patent.   For example, Defendants offered its customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '446 Patent via at least their use of the Accused Products.

76.     Since issuance of the '446 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '446 Patent or that would otherwise require marking under 35 U.S.C. § 287.

77.     CC may recover pre-suit damages for Defendants' infringement of the '446 Patent under 35 U.S.C. § 287.

78.     As a result of Defendants' infringement of the '446 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

79.     Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '446 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '446 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '446 Patent by using the

Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '446 Patent, including, for example, Claim 8 of the '446 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '446 Patent and with the knowledge that the induced acts constitute infringement.  Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '446 Patent.

80.    Defendants have also indirectly infringed by contributing to the infringement of the '446 Patent.  Defendants have contributed to the direct infringement of the '446 Patent by their customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '446 Patent, including, for example, claim 8 of the '446 Patent.  The special features include, for example, the input mechanism recited in claim 8, including the use of that mechanism to make functions of the device available based on authentication performed via the mechanism.  The special features constitute a material part of the invention of one or more of the claims of the '446 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

81.    Defendants' direct and indirect infringement of the '446 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT IV – INFRINGEMENT OF THE '699 PATENT

82.    CC repeats and re-alleges the allegations in Paragraphs 1-81 as though fully set forth in their entirety.

83.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '699 Patent, including, for example, claim 10, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

84.    An exemplary claim chart demonstrating Defendants' infringement of the '699 Patent is attached as Exhibit J and incorporated herein by reference.

85.    Defendants have knowledge of the '699 Patent and of its infringement of the '699 Patent at least through the service of this Complaint.

86.    On information and belief, despite Defendants' knowledge of the '699 Patent and of its infringement of the '699 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '699 Patent.

87.    On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 10 of the '699 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '699 Patent via at least their use of the Accused Products.

88.    Since issuance of the '699 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '699 Patent or that would otherwise require marking under 35 U.S.C. § 287.

89.    CC may recover pre-suit damages for Defendants' infringement of the '699 Patent under 35 U.S.C. § 287.

90. As a result of Defendants' infringement of the '699 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

91. Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '699 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '699 Patent. Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '699 Patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '699 Patent, including, for example, Claim 10 of the '699 Patent. Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendants performed these steps, which constitute induced infringement with the knowledge of the '699 Patent and with the knowledge that the induced acts constitute infringement. Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '699 Patent.

92. Defendants have also indirectly infringed by contributing to the infringement of the '699 Patent. Defendants have contributed to the direct infringement of the '699 Patent by their customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '699 Patent, including, for example, claim 10 of the '699 Patent. The special features include, for example, providing audio

signals at different volume levels, wherein the second audio volume level is non-intrusively lower than the first audio volume level initially, but increases to a discernable volume level higher than the first audio volume level until the user responds to the second audio signal.  The special features constitute a material part of the invention of one or more of the claims of the '699 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

93.    Defendants' direct and indirect infringement of the '699 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT V – INFRINGEMENT OF THE '003 PATENT

94.    CC repeats and re-alleges the allegations in Paragraphs 1-93 as though fully set forth in their entirety.

95.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '003 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

96.    An exemplary claim chart demonstrating Defendants' infringement of the '003 Patent is attached as Exhibit K and incorporated herein by reference.

97.    Defendants have knowledge of the '003 Patent and of its infringement of the '003 Patent at least through the service of this Complaint.

98.    On information and belief, despite Defendants' knowledge of the '003 Patent and of its infringement of the '003 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '003 Patent.

99.    On information and belief, Defendants' actions represented a specific intent to

induce infringement of at least claim 1 of the '003 Patent.  For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '003 Patent via at least their use of the Accused Products.

100.    Since issuance of the '003 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '003 Patent or that would otherwise require marking under 35 U.S.C. § 287.

101.    CC may recover pre-suit damages for Defendants' infringement of the '003 Patent under 35 U.S.C. § 287.

102.    As a result of Defendants' infringement of the '003 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

103.    Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '003 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '003 Patent.  Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '003 Patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '003 Patent, including, for example, Claim 1 of the '003 Patent.  Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Defendants performed these steps, which constitute induced infringement with the knowledge of the '003 Patent and with

the knowledge that the induced acts constitute infringement. Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '003 Patent.

104.    Defendants have also indirectly infringed by contributing to the infringement of the '003 Patent. Defendants have contributed to the direct infringement of the '003 Patent by their customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '003 Patent, including, for example, claim 1 of the '003 Patent. The special features include, for example, serving data or applications from mobile devices. The special features constitute a material part of the invention of one or more of the claims of the '003 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

105.    Defendants' direct and indirect infringement of the '003 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT VI – INFRINGEMENT OF THE '703 PATENT

106.    CC repeats and re-alleges the allegations in Paragraphs 1-105 as though fully set forth in their entirety.

107.    Defendants have directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '703 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

108.    An exemplary claim chart demonstrating Defendants' infringement of the '703 Patent is attached as Exhibit L and incorporated herein by reference.

109. Defendants have knowledge of the '703 Patent and of its infringement of the '703 Patent at least through the service of this Complaint.

110. On information and belief, despite Defendants' knowledge of the '703 Patent and of its infringement of the '703 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '703 Patent.

111. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '703 Patent. For example, Defendants offered their customers extensive customer support and instructions that instructed and encouraged their customers to infringe the '703 Patent via at least their use of the Accused Products.

112. Since issuance of the '703 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '703 Patent or that would otherwise require marking under 35 U.S.C. § 287.

113. CC may recover pre-suit damages for Defendants' infringement of the '703 Patent under 35 U.S.C. § 287.

114. As a result of Defendants' infringement of the '703 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

115. Additionally, on information and belief, Defendants have also indirectly infringed one or more claims of the '703 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '703 Patent. Defendants have induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '703 Patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes

one or more claims of the '703 Patent, including, for example, Claim 1 of the '703 Patent. Such steps by Defendants included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Defendants performed these steps, which constitute induced infringement with the knowledge of the '703 Patent and with the knowledge that the induced acts constitute infringement. Defendants were aware that the normal and customary use of the Accused Products by others would infringe the '703 Patent.

116. Defendants have also indirectly infringed by contributing to the infringement of the '703 Patent. Defendants have contributed to the direct infringement of the '703 Patent by their customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '703 Patent, including, for example, claim 1 of the '703 Patent. The special features include, for example, sending image messages from one mobile device to another. The special features constitute a material part of the invention of one or more of the claims of the '703 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

117. Defendants' direct and indirect infringement of the '703 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

CC requests that the Court find in its favor and against Defendants, and that the Court grant CC the following relief:

31

a.    Judgment that one or more claims of the Patents-in-Suit have been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b.    Judgment that Defendants account for and pay to CC all damages to and costs incurred by CC because of Defendants' infringing activities and other conduct complained of herein;

c.    Judgment that Defendants' infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.    Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e.    That this Court declare this an exceptional case and award CC its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: December 23, 2025          Respectfully submitted,

By: /s/ *Fred I. Williams*
Fred I. Williams
Texas State Bar No. 07034855
Lea N. Brigtsen
Texas State Bar No. 24054504
Stephen R. Dartt
Texas State Bar No. 24042370
WILLIAMS SIMONS & LANDIS PC
The Littlefield Building
106 East Sixth Street, Suite 900-168
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
lbrigtsen@wsltrial.com
sdartt@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PC
1735 Market Street, Suite 125, #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Cloud Controls LLC*